IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-cv-01761-RPM

THE ESTATE OF CARLOS BASSATT,
CARLOS BASSATT, JR.,
   Personal representative,

  Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE CITY AND COUNTY OF DENVER and
PATRICK SANCHEZ,

  Defendants.

## ORDER FOR SUMMARY JUDGMENT

  In the fall of 2007, Carlos Bassatt ("Bassatt"), an Hispanic male, was a substitute teacher at West High School, in School District No. 1 in the City and County of Denver ("the District"). Bassatt was also assigned as a student teacher at West in conjunction with his enrollment at Regis University, where he was pursuing a master's degree in education. During the relevant time period, Patrick Sanchez ("Sanchez") was the principal of West High School.

  On the afternoon of September 14, 2007, Maria Iams – a District employee who worked at another location – drove to West to attend a meeting and parked her car in the school's parking lot. Iams reported that she saw an Hispanic man masturbating in a red car parked next to

hers. She drove away and called a colleague who relayed Iams' report to West's security personnel.

Denver police officer Vincente Damian ("Officer Damian") investigated Iams' report. He talked with Iams that afternoon and located security video tape of the parking lot. Officer Damian determined that Iams had parked next to a maroon Ford Focus that belonged to Bassatt. The video tape showed Bassatt walking to his car shortly before the incident in question. Officer Damian talked with Iams again and showed her the video tape. Iams could identify Bassatt's car as the one next to hers, but she could not identify Bassatt as the man she had seen masturbating. Officer Damian obtained a written statement from Iams. In that statement, Iams stated that the Hispanic man she had seen masturbating was wearing a tank top. In the video tape, Bassatt was wearing a dark polo shirt and khaki slacks.

Principal Sanchez was told about the incident on September 14, 2007. On September 17, 2007, Officer Damian told Principal Sanchez that Bassatt had been identified as the suspect. Officer Damian and Principal Sanchez met with Bassatt that day and told him that he had been accused of masturbating in the school parking lot. Bassatt denied the allegations. Officer Damian gave Bassatt a request to appear at the Denver Police Department ("DPD") the next day. Principal Sanchez told the Bassatt that he was being placed on administrative leave, pending further investigation.

Officer Damian prepared a written statement and incident report, summarizing his investigative activities from September 14 through September 17, 2007.

On September 18, 2007, Bassatt appeared at the DPD. On the advice of counsel, he did not make a statement to the police. The Denver District Attorney's office declined prosecution.

On September 19, 2007, Officer Damian told Principal Sanchez that no charges would be filed against Bassatt. After learning that news, Principal Sanchez sent Bassatt an email, stating "We have the all clear for you to return to West in good standing, the investigation did not determine that the allegations were founded." (Defs.' Ex. H). Bassatt returned to work on September 20, 2007.

Principal Sanchez had spoken about the situation with Bart Muller ("Muller"), the District's Director of Labor Relations. Muller told Principal Sanchez that the District was not bound by the district attorney's decision not to prosecute and that it needed to assure the safety of its students. Muller reviewed Iams' personnel file and contacted her supervisor, who reported that Iams was an exemplary employee.

On September 26, 2007, Principal Sanchez and Muller met with Bassatt. Bassatt's wife, who was also teacher at West, accompanied him to that meeting. Sanchez and Mueller questioned Bassatt about Iams' accusation. Bassatt admitted that he had been reclining in his car when Iams parked in the spot next to his, but he vehemently denied that he had been masturbating. Principal Sanchez and Muller asked Bassatt why Iams would falsely accuse him. Bassatt could offer no reason and offered to take a polygraph test. Principal Sanchez and Muller rejected the Plaintiff's offer to take a polygraph test. Bassatt became upset and asserted that the accusation was racially-motivated and that the District's assessment of the situation was discriminatory.

In a letter dated September 27, 2007, the District informed Bassatt that the District had terminated him from its payroll system and that he would not be eligible for rehire within the

District.  The District notified the Colorado Department of Education that Bassatt had been discharged because a complaint of indecent exposure had been made against him.

The District's stated reason for these actions is that Principal Sanchez determined that it was more likely than not that Bassatt had been masturbating in the school parking lot.

In January, 2008, Bassatt filed a Charge of Discrimination with the Colorado Civil Rights Commission ("CCRC"), alleging racial discrimination and retaliation in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-24-402.  The CCRC determined that there was probable cause for Bassatt's charges and filed a formal complaint against the District in the Colorado Office of Administrative Courts.

In July 2011, Bassatt filed this employment discrimination action against the District and Sanchez.  In the second amended complaint, the plaintiff claims (1) that the District violated Title VII of the Civil Rights Act of 1964, as amended, 42. U.S. C. § 2000e et seq, by retaliating against Bassatt for his opposition to discrimination; (2) that the District violated 42 U.S.C. §§ 1981 and 1983 by retaliating against Bassatt for invoking his rights under a student teaching agreement to oppose and report discrimination; (3) that Sanchez (in his official capacity) violated 42 U.S.C. §§ 1981 and 1983 by retaliating against Bassatt for invoking his rights under the student teacher agreement.  Although the § 1983 claims are styled as separate claims for relief, they are identical to the claims under § 1981 claims and are merely a conduit for those claims.  See Second Am. Compl. ¶¶ 76-82 and 101-107.  The complaint requested back pay and compensatory damages, including damages for emotional suffering; punitive damages; injunctive and declaratory relief, including reinstatement to complete the student teaching assignment and removal of negative reports from Bassatt's Colorado Department of Education

file; pre-judgment and post-judgment interest; attorney's fees and other expenses and costs of litigation.

Bassatt died on August 24, 2012. His estate has been substituted as the plaintiff.

The defendants have moved for summary judgment of dismissal of this action.

A hearing on the motion was held on April 19, 2013, which afforded counsel the opportunity to inform this court about the status of the proceedings before the Colorado Civil Rights Commission. That agency has determined that Bassatt was the victim of retaliation and is addressing the issue of back pay. Any final determination of the CCRC, and particularly its conclusions about pretext, could still be the subject of state court appellate review. The plaintiff's counsel acknowledged that the request for back pay has no value, after offset by earnings from Bassatt's subsequent employment. This court ruled that other economic damages based on Bassatt's intention in 2007 to obtain employment as a full-time teacher are speculative and will not be considered in this action. The plaintiff's request for injunctive relief was denied. The court took the defendants' motion under advisement and requested additional briefing on the issue of whether the plaintiff's alleged non-economic damages survive his death.

The plaintiff's claims under §§ 1981 and 1983 against defendant Sanchez (the fourth and seventh claims) are dismissed because they are official capacity claims that duplicate the plaintiff's claims under § 1981 and § 1983 against the District.

This discrimination action involves two relationships between the District and Bassatt – his employment as a substitute teacher and his student teaching assignment. As pleaded, the plaintiff's §§ 1981 and 1983 claim concerns only an alleged student teacher agreement.

The legal status of student teachers in Colorado is addressed in the Cooperative Teacher Education Act. *See* C.R.S. § 22-62-101 et seq. That Act authorizes school boards to enter into "written contractual agreements or arrangements with any college or university for the purpose of providing field experiences in teacher education." *Id*. § 22-62-103(1). Such agreements define "the rights and responsibilities of the cooperating school districts, teacher preparation institutions, students, and other participating personnel." *Id.* § 22-62-103(2). The statute provides that the "duties and responsibilities of the student teacher shall be determined by mutual agreement between the school district and the authorized representative of the college." C.R.S. § 22-62-105(1).

Such an agreement pertaining to Bassatt's assignment at West was memorialized in the following documents: A letter dated May 21, 2007, from a Regis professor to Sanchez, which requested student teacher placement for Bassatt for the fall semester of 2007; Principal Sanchez's signature on a written confirmation form approving Bassatt's student teaching assignment; a Regis University Student Teacher Agreement, signed by Bassatt on August 23, 2007, and the document entitled "Regis University Learning Contract for Student Teaching," which was signed by a West teacher (Alan Dominguez), Bassatt, and Bassatt's supervisor at Regis. (Pl.'s Ex. 3). Those documents do not support a finding of a contract with the District for continued employment or a property right protected by due process. The claims under § 1981 and § 1983 are not supported.

The findings and conclusions of the CCRC are neither binding nor persuasive. Principal Sanchez made a credibility determination as to Iams' statements and concluded that any doubt should be resolved against Bassatt after being advised by Muller of the need to assure the safety

of the students. That is a legitimate business decision. The plaintiff has failed to show that it is pretextual.

The claim for non-economic damages did not survive Bassatt's death under C.R.S. § 13-20-101(1). While this is not a traditional tort action, the damages sought are those that are precluded under the statute.

Accordingly, it is

ORDERED that the defendants' motion for summary judgment [#54] is granted.

The clerk shall enter a final judgment dismissing all of the plaintiff's claims and this civil action with an award of defendants' costs.

Dated: May 17, 2013

BY THE COURT:

s/Richard P. Matsch
———————————————
Richard P. Matsch, Senior District Judge